IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MUHAMMAD MUQADDAR JAVAID,

        Plaintiff,                                                    No. CIV S-07-0386 FCD GGH PS

     vs.

ALLIED-BARTON SECURITY SERVICES,                FINDINGS AND RECOMMENDATIONS
BARTON PROTECTIVE SERVICES, INC.,

        Defendant.

_____/

Presently pending before this court is a motion for summary judgment filed by defendant AlliedBarton Security Services LP ("AlliedBarton"),[1] submitted for decision on the papers on December 10, 2007. Trial was vacated pending the court's decision on the instant motion. This action, in which plaintiff is proceeding pro se, is referred to the undersigned pursuant to E.D. Cal. L.R. 72-302(c)(21).

---

[1] Defendant states plaintiff misidentified it by plaintiff as "Allied-Barton Security Services" and "Barton Protective Services, Inc." Pursuant to Federal Rule of Civil Procedure 7.1, defendant has disclosed it is "a limited partnership organized under the laws of the State of Delaware. There are two partners associated with AlliedBarton. The limited partner is Spectaguad Acquisition LLC, a Delaware limited liability company ("Spectaguard") and the general partner is Allied Security Holdings LLC, a Delaware limited liability company ("Allied"). No publicly held corporation owns ten percent (10%) or more of the stock of AlliedBarton, Spectaguard or Allied." Defendant's Statement filed February 27, 2007.

1

For the reasons that follow, this court recommends that defendant's motion be granted pursuant to application of the doctrine of judicial estoppel, on the ground that plaintiff failed to identify this action, a potential asset, in the disclosures associated with his contemporaneous bankruptcy proceeding.

I. BACKGROUND

Plaintiff filed this Title VII action in the Sacramento County Superior Court on December 16, 2006, alleging discriminatory harassment, retaliation and termination of employment based on plaintiff's race (Asian), national origin (Pakistani), color and religion (Muslim).[2] Defendant removed the action to this court and filed its answer on February 23, 2007. Defendant filed the instant motion for summary judgment on November 8, 2007. Following the filing of plaintiff's "response" on November 28, 2007, plaintiff was informed of the requirements for opposing a motion for summary judgment and accorded additional time within which to do so. Plaintiff filed his opposition on December 28, 2007.

The following facts are undisputed unless otherwise noted.[3] Plaintiff was hired as a security officer by Barton Protective Services (predecessor in interest to AlliedBarton) on June

---

[2] Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., makes it illegal for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. S 2000e-2(a)(1). It governs claims of discrimination and claims of retaliation for complaining of such discrimination. Because intent is at issue, courts are cautious in granting summary judgment in Title VII cases, but may do so if appropriate. Foster v. Arcata Assoc. Inc., 772 F.2d 1453, 1459 (9th Cir. 1985), overruled on other grounds, Kennedy v. Allied Mutual Ins. Co., 952 F.2d 262 (9th Cir. 1991). The Ninth Circuit "has set a high standard for the granting of summary judgment in employment discrimination cases." Schnidrig v. Columbia Mach., Inc., 80 F.3d 1406, 1410 (9th Cir.1996). "If a rational trier of fact could, on all the evidence, find that the employer's action was taken for impermissibly discriminatory reasons, summary judgment for the defense is inappropriate." Ibid. (quoting Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir.1994)).

[3] In his Amended Response in Opposition to Defendant's Motion for Summary Judgment, plaintiff responds to defendant's Statement of Undisputed Facts with a list of facts he does not dispute, and a list and discussion of the disputed facts. Although there is some discrepancy in plaintiff's lists (see Amended Response, at p. 2, and plaintiff's Statement of Disputed and Undisputed Facts), the court has compared and reconciled them before presentation herein.

3, 2000. Plaintiff was assigned by Barton Protective Services, and later by AlliedBarton, to provide security services to Comtek, Inc., a facility in Rocklin, California, pursuant to a contract for services between Comtek and defendant. AlliedBarton is an at-will employer and does not guarantee employment of any security officers for a definite period of time. As part of the hiring process, plaintiff received training and was familiar with defendant's at-will employment policy. Plaintiff's Deposition (Exh. A to Loegel Decl.), at 32:11-33:2, 38:17-19, 45:21-46:2, 45:21-23; Moore Decl. at ¶¶ 3-5 (Exh. B to Loegel Decl.); Bristol Decl. at ¶ 5 (Exh. C to Loegel Decl.).

In 2004, Marc Moore, a black male, became the Area Manager overseeing the Comtek facility and supervising plaintiff. Mr. Moore promoted plaintiff to the position of account manager at the Comtek facility effective September 2004, at the hourly rate of $13.00. In April 2005, the Comtek Facilities Manager, Michael Bristle, renegotiated the terms of the contract between Comtek and AlliedBarton with the goal of lowering Comtek's security services costs. Plaintiff's Deposition, at 52:18-20, 46:21-47, 49:1-4; Moore Decl. at ¶¶ 1, 4; Bristol Decl. at ¶¶ 3-4, 6-7.

Mr. Moore states that "after the renegotiation was complete, I learned that the position of account manager at Comtek was eliminated and all security officers at the site were to be paid a flat rate of $10.00 per hour. Mr. Javaid was allowed to remain at the Comtek facility as a security officer. In April 2005, I told Mr. Javaid about the change in the contract, including the elimination of the account manager position, the change in pay rate, and the fact that he would no longer have any supervisory authority over other security officers. I agreed to allow Mr. Javaid to remain at the Comtek facility as a security officer and agreed to pay Mr. Javaid $11.00 per hour, which was one dollar [] per hour more than all other officers at the site received, in exchange for Mr. Javaid's agreement to [fax] weekly sign-in sheets to the AlliedBarton District Office . . . ." Moore Decl. at ¶¶ 9-11. Plaintiff disputes these statements of Mr. Moore as "not completely accurate," but does not explain or direct the court to alternate evidence. Plaintiff's Statement of Disputed and Undisputed Facts ("Statement"), at p. 2.

3

1	Sometime prior to May 3, 2005, plaintiff emailed Comtek management and
2  objected to the elimination of his position and change in pay rate.  On May 3, 2005, plaintiff met
3  with Mr. Bristle, a Comtek employee, and requested that his position and pay rate be reinstated.
4  On May 4, 2005, Mr. Moore informed plaintiff that he was not to contact Comtek representatives
5  regarding position and pay rate matters, that these issues were internal to AlliedBarton and
6  plaintiff should limit such communications to his supervisor, Mr. Moore.  Plaintiff's Deposition,
7  at 61:23-62:4, 58:11-13, 59:14-62:14; Moore Decl. at ¶¶ 13, 14.
8	 On May 18, 2005, plaintiff was involved in verbal disputes with AlliedBarton
9  Security Officers James Savoie and Deborah Pugh about plaintiff's role.  On the same day, Mr.
10 Moore received complaints from AlliedBarton security officers that Mr. Javaid was making
11 unauthorized changes to their work schedules at Comtek.  (Plaintiff disputes that he made
12 unauthorized changes to the schedules of security officers.  Plaintiff's Statement, at p. 2.)  Also
13 on May 18, 2005, Mr. Bristle contacted Mr. Moore and requested that plaintiff be removed from
14 the Comtek facility because he was being disruptive.  Plaintiff's Deposition, at 67:8-68:7, 68:17-
15 70:9; Moore Decl. at ¶ 18, 19, 20; Bristol Decl. at ¶ 8, 10; Exh. E to Loegel Decl. (Plaintiff's
16 "Incident Reports").  On May 19, 2005, AlliedBarton's District Support Manager, Rhonda
17 Wallace, instructed plaintiff to schedule Security Officer James Savoie in the shift of Leo
18 Guimoye.  On May 20, 2005, plaintiff was involved in another verbal dispute with AlliedBarton
19 Security Officer James Savoie.  Plaintiff's Deposition, at 93:9-93:15, 70:11-24.
20	On May 20, 2005, Mr. Moore and Ms. Wallace informed plaintiff he was being
21 removed from the Comtek facility, effective immediately, at the request of Mr. Bristle.  Mr.
22 Moore provided plaintiff with a memorandum recounting the reasons for his removal.  Plaintiff's
23 Deposition, at 72:23-73:16 (Amended Exh. A, Second Loegel Decl.); Moore Decl. at ¶ 22; Exh.
24 F to Loegel Decl.
25 \\\\\
26 \\\\\

1        Mr. Moore states that, "Because Mr. Javaid had been removed from his work site
2 and had refused to accept any alternative positions,[4] I terminated him on May 23, 2005. At the
3 time I made the decision to terminate Mr. Javaid, I was not aware that Mr. Javaid had ever
4 complained to anyone about alleged discrimination."  Moore Decl. at ¶ 26.

5        Plaintiff disputes Mr. Moore's statements, saying this "was not the reason for
6 terminating plaintiff," and that discriminatory "slurs were inferred by actions," citing the
7 following portion of his own deposition testimony (Plaintiff's Statement, at p. 3, citing Plaintiff's
8 Deposition, at 120:3-21):

```
Q.   Did Marc Moore ever say anything about your race?
A.   No.
Q.   Did he ever say anything about your national origin?
A.   No.
Q.   Your religion?
A.   No.
Q.   Your color?
A.   No.
Q.   Did Rhonda Wallace ever say anything about your national origin?
A.   No.
Q.   Your race?
A.   No.
Q.   Your color?
A.   No.
Q.   Your religion?
A.   No.
```

18        Plaintiff testified in deposition that although he completed an incident report on
19 May 20, 2005, alleging discriminatory treatment by defendant, he did not inform AlliedBarton or
20 Comtek about his complaints or submit the report to any person or entity.  Plaintiff's Deposition,
21 at 101:10-102:14.  That report provides that "On 05-20-05 Muhammad Javaid, Acct. Manager,

---

[4] Mr. Moore states that during this May 20, 2005 meeting, he offered plaintiff a full-time position as a security officer at nearby Watkins Motor Freight in Elk Grove, with the same pay, benefits and work hours as plaintiff had at Comtek, but that plaintiff refused the offer. Moore Decl. at ¶¶ 23, 24; Plaintiff's Deposition, at 73:17-74:1 (Amended Exh. A, Second Loegel Decl.).
    Mr. Moore further states that later on May 20, 2005, he offered plaintiff a full-time position as a security officer at a Sacramento Target store earning the same rate of pay, benefits and hours as plaintiff had at Comtek. Moore Decl. at ¶ 25. Plaintiff declined any alternate position. Plaintiff's Deposition, at 77:21-23; 131:22-25.

5

1 AlliedBarton Security @ Comtek fired and harassed because of his origin and Muslim religion

2 [and] ridiculed during his employment." [Sic.]  Exh. G. to Loegel Decl.  Plaintiff now states that

3 at deposition his "direct answer to attorney's question presents inaccurate picture," Plaintiff's

4 Statement, at p. 3, but he does not elucidate.

5          On January 17, 2006, plaintiff filed a discrimination complaint against

6 AlliedBarton (also naming Marc Moore, Area Manager, and Rhonda Wallace, Human

7 Resources) with the California Department of Fair Employment and Housing ("DFEH"), alleging

8 the following based on plaintiff's race, national origin, color and religion:

> On May 4, 2005, denied me a leave.  On May 13, 2005, denied me a promotion,[5] on May 19, 2005, harassed me and on May 20, 2005, terminated me in retaliation for complaining about a $2.00 per hour pay reduction and a change in work schedule for employees.

12 Plaintiff's CHEFA Complaint (Exh. H to Loegel Decl.); Plaintiff's Deposition, at 81:18-84:12.

13 \\\\\

14 \\\\\

15 \\\\\

---

[5] Plaintiff's allegations include the assertion he was "denied a leave" on May 4, 2005.  Pursuant to his deposition, plaintiff stated that he had a car crash in April 2005.  "After that, doctor gave me note you are unable to work, but I still work over there.  I fax to the branch, no feedback, nothing.  Because over there is a problem.  Some people not show up, so I work over there extra hours. . . . [Q:  So you requested leave, and then when they never got back to you, you just kept working?] . . . . Yeah."  Plaintiff's Deposition, at 92:7-20.  Mr. Moore states that he never received any requests for leave from plaintiff in May 2005, as required by AlliedBarton policy and its employee handbook, nor was he aware that plaintiff had desired leave during this time.  Moore Decl. at ¶¶ 15-16, citing generally, AlliedBarton Employee Handbook (Exh. D. to Loegel Decl.).  Plaintiff disputes Mr. Moore's statements as "not accurate," and states that his own deposition testimony was an "incomplete statement.  Answer to Q too brief, more facts involved . . . all facts not presented," but does not further explain or direct the court to additional evidence.  Plaintiff's Statement, at p. 2.

    Plaintiff's allegations also include the assertion he was denied a promotion on May 13, 2005.  In his deposition, plaintiff stated, "I request like for the Woodland position, like a roving position, like the other position, and they deny."  Plaintiff's Deposition, at 92:23-25; see generally, id., 92:21-93:6.  Mr. Moore states, "On May 13, 2005, Mr. Javaid requested a promotion to another site, but no position was available at that time.  I told Mr. Javaid that I would transfer him as soon as a more favorable position became available for which he was qualified."  Moore Decl. at ¶ 17.

6

Following the administrative denial of his claim and receipt of a "right to sue" letter from DFEH,[6] plaintiff filed this action in the Sacramento County Superior Court on December 16, 2006, and executed service upon defendant on January 24, 2007.

The complaint alleges that despite positive appraisals of plaintiff's work,[7] defendant wrongfully, and in retaliation, terminated plaintiff after he complained to the corporate office about the change in his position and pay. The complaint avers that "[p]laintiff was denied his annual leave because he had a car crash on April 23, 2005; he was denied promotion on May 13, 2005; he was denied accommodation from 2001 to 2005; was denied equal pay on May 4, 2005; and was harassed on the phone on May 19, 2005." Complaint, ¶ 22. Plaintiff also asserts "constant harassment" in the form of emails from Michael Bristle. Ibid. The complaint seeks money damages based on claims for wrongful termination, retaliation, discrimination on the basis of race, color, religion or national ancestry, intentional infliction of emotional distress, and breach of the implied covenant of good faith and fair dealing.

The following week, on December 21, 2006, plaintiff filed for bankruptcy pursuant to Chapter 7 of the U.S. Bankruptcy Code (E. D. Cal. Bankruptcy Petition No. 06-25515), but did not identify his lawsuit against AlliedBarton in the required disclosures. Plaintiff's Bankruptcy Petition (Exh. I to Loegel Decl.); Plaintiff's Deposition, at 21:24-23:4. The financial disclosure forms attendant to his bankruptcy petition expressly required that plaintiff, under penalty of perjury, "[l]ist all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." Plaintiff's Bankruptcy Petition (Exh. I to Loegel Decl.), "Statement of Financial Affairs,"

---

[6] Plaintiff has provided neither the dates nor documents supporting the administrative denial of his claim and receipt of a "right to sue" letter, but defendant does not dispute plaintiff's representations.

[7] See, e.g., attachments to plaintiff's Opposition, which include performance evaluations completed September 2000 and August 2003; plaintiff's "Nomination of Excellence in the Security Services of 2004," in his position as Account Manager at Comtek Computer Systems; and letters of commendation written in August 2004 and March/April 2005.

7

p. 3, Question 4(a); see also p. 11 (signature under penalty of perjury).  Plaintiff listed only one case, "Discover Card v. Javaid," which had apparently already been resolved.

On March 27, 2007, the bankruptcy court filed its Order Discharging Debtor (providing no distribution to creditors),[8] and the case was closed April 6, 2007.

Plaintiff re-applied to work at AlliedBarton in 2006.  Plaintiff's Deposition, at 127:22-24.

## II. SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment pursuant to Fed. R. Civ. P. 56 avoids unnecessary trials in cases with no disputed material facts.  See Northwest Motorcycle Ass'n v. United States Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994).  At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).  Two steps are necessary.  First, according to the substantive law, the court must determine what facts are material.  Second, in light of the appropriate standard of proof, the court must determine whether material factual disputes require resolution at trial.  See id. at 248, 106 S. Ct. 2510.

When the opposing party has the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim.  See e.g., Lujan v. National Wildlife Fed'n, 497 U.S. 871, 885, 110 S. Ct. 3177, 3187 (1990).  When the opposing party has the burden of proof, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue.  See Celotex v. Cattret, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2553 (1986).

---

[8] Chapter 7 bankruptcies or "liquidations" release the debtor from all dischargeable debts and provide a "fresh start," while Chapter 11 and Chapter 13 bankruptcies restructure debts with the goal of repaying all creditors.  These distinctions among the cases cited *infra* are not material to their common application of the judicial estoppel doctrine to bar legal actions that should have been, but were not, disclosed in a prior or contemporaneous bankruptcy proceeding.

If the moving party meets its burden, the burden shifts to the opposing party to establish genuine material factual issues. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).[9] The opposing party must demonstrate that disputed facts are material, i.e., facts that might affect the outcome of the suit under the governing law, see Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that disputes are genuine, i.e., the parties' differing versions of the truth require resolution at trial, see T.W. Elec., 809 F.2d at 631. The opposing party may not rest upon the pleadings' mere allegations or denials, but must present *evidence* of specific disputed facts. See Anderson, 477 U.S. at 248, 106 S. Ct. 2510.[10] Conclusory statements cannot defeat a properly supported summary judgment motion. See Scott v. Rosenberg, 702 F.2d 1263, 1271-72 (9th Cir. 1983).

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. See Anderson at 249, 255, 106 S. Ct. at 2510-11, 1513. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. American Int'l Group, Inc. v. American Int'l Bank, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing Celotex, 477 U.S. at 322, 106 S. Ct. at 2552).

If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. See Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the

---

[9] The nonmoving party with the burden of proof "must establish each element of his claim with significant probative evidence tending to support the complaint." Barnett v. Centoni, 31 F.3d 813, 815 (9th Cir. 1994) (internal quotations omitted). A complete failure of proof on an essential element of the nonmoving party's case renders all other facts immaterial, and entitles the moving party to summary judgment. Celotex, 477 U.S. at 322, 106 S. Ct. at 2552.

[10] A verified complaint may be used as an affidavit in opposition to the motion. Schroeder v McDonald, 55 F. 3d 454, 460 (9th Cir. 1995); McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curiam).

nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. 1356 (citation omitted). In that case, the court should grant summary judgment.

III. ANALYSIS

Defendant contends plaintiff should be judicially estopped from pursuing this action because he failed to disclose it as a potential asset in his bankruptcy petition, citing Caviness v. England, 2007 WL 1302522 (E.D.Cal. May 3, 2007), Hamilton v. State Farm & Casualty Co., 270 F.3d 778, 783 (9th Cir. 2001), and Hay v. First Interstate Bank of Kalispell, 978 F.2d 555, 557 (9th Cir. 1992). Although plaintiff filed an opposition, he did not respond to this contention.

As earlier noted, plaintiff filed the instant action in Sacramento County Superior Court on December 15, 2006, the week preceding the filing of his bankruptcy petition on December 21, 2006. The financial disclosure forms expressly required that plaintiff "[l]ist all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case." Plaintiff's Bankruptcy Petition, "Statement of Financial Affairs," p. 3, Question 4(a) (Exh. I to Loegel Decl.).[11]

Pending causes of action are among the "legal or equitable interests" that become the property of a bankruptcy estate upon filing a bankruptcy petition. See 11 U.S.C. § 541(a)(1) (the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case"); see also Sierra Switchboard Co. v. Westinghouse Elec. Corp., 789 F.2d 705, 707 (9th Cir.1986) (even personal injury claims are part of the bankruptcy estate whether or not transferable or assignable under state law). Upon appointment of a bankruptcy trustee, "the debtor's assets and claims pass to the trustee, making the trustee 'the proper party in interest. . . .'" In re Eisen, 31 F.3d 1447, 1451, n. 2 (9th Cir. 1994) (citation omitted); see also

---

[11] Plaintiff completed his bankruptcy petition with the assistance of non-attorney bankruptcy petition preparer Gerald Westreich. This fact does not diminish plaintiff's responsibility for providing all pertinent information to accurately complete the requisite forms.

Turner v. Cook, 362 F.3d 1219, 1225-1226 (9th Cir. 2004) (upon filing a petition for bankruptcy, all legal and equitable interests of the debtor become the property of the bankruptcy estate as represented by the bankruptcy trustee).  Unless an independent legal claim has been disclosed to, and abandoned by, the bankruptcy trustee, title to the claim does not revest in the debtor.  Stein v. United Artists Corporation, 691 F.2d 885, 891 (9th Cir. 1982), citing in First National Bank v. Lasater, 196 U.S. 115, 25 S.Ct. 206 (1905).  "If the claim was of value . . . it was something to which the creditors were entitled, and this bankrupt could not, by withholding knowledge of its existence, obtain a release from his debts and still assert title to the property."  Id., 196 U.S. at 119.  See also, In re Coastal Plains, Inc., 179 F.3d 197, 207-208 (5th Cir. 1999) ("It goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims. . . . Any claim with potential must be disclosed, even if it is 'contingent, dependent, or conditional" (citations and internal quotations omitted)); Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc., 989 F.2d 570, 571 (1st Cir. 1993) ("having obtained judicial relief on the representation that no claims existed, [plaintiff] can not now resurrect them and obtain relief on the opposite basis. . . . it is an unacceptable abuse of judicial proceedings").

In Hay v. First Interstate Bank of Kalispell, 978 F.2d 555 (9th Cir. 1992), the Ninth Circuit applied the doctrine of judicial estoppel in the bankruptcy context to affirm summary judgment on behalf of defendants based on plaintiff's failure to notify the bankruptcy court that he had legal claims against defendants, who were also creditors in the bankruptcy proceedings. Although plaintiff filed his legal action a substantial period of time after the bankruptcy court issued its final decree, the court found that plaintiff had concluded "some four months prior to the close of the bankruptcy case" that he had legal claims against defendants, and was therefore required to disclose this potential asset (and conflict) to the bankruptcy court.  978 F.2d at 557. While "all facts were not known to [plaintiff] at that time . . . enough was known to require notification of the existence of the asset to the bankruptcy court."  Ibid. (citing authorities

requiring full disclosure in bankruptcy proceedings).[12]  The appeals court concluded, "Failure to give the required notice estops [plaintiff] and justifies the grant of summary judgment to the defendants."[13]  Ibid., citing Monroe County Oil Co. v. Amoco Oil Co., 75 B.R. 158, 162 (S.D. Ind. 1987) ("the debtor must disclose any litigation likely to arise in a nonbankruptcy context" (internal quotation and citation omitted)), and Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 417 (3rd Cir. 1988 ) (citing Monroe and adding, "[t]he result of a failure to disclose such claims triggers application of the doctrine of equitable estoppel, operating against a subsequent attempt to prosecute the actions" (citation omitted)).  The requirement of full disclosure was more than a general obligation in Hay because the plan proposed and confirmed by the bankruptcy court included settlement of defendant bank's secured claim against plaintiffs.  Accord, In re Heritage Hotel Partnership I,160 B.R. 374, 378 (9th Cir. BAP 1993) (independent cause of action against creditor based on pre-petition acts was barred because not disclosed in bankruptcy proceedings).

The Supreme Court subsequently reviewed the judicial estoppel doctrine in New Hampshire v. Maine, 532 U.S. 742, 749-750, 121 S.Ct. 1808 (2001):

> Although we have not had occasion to discuss the doctrine elaborately, other courts have uniformly recognized that its purpose is "to protect the integrity of the judicial process," Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 (6th Cir. 1982), by "prohibiting parties from deliberately changing positions according to the exigencies of the moment," United States v. McCaskey, 9 F.3d 368, 378 (5th Cir. 1993).  See In re Cassidy, 892 F.2d 637, 641 (7th Cir. 1990) ("Judicial estoppel is a doctrine intended to prevent the perversion of the judicial process."); Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166 (4th Cir. 1982) (judicial estoppel "protect [s]

---

[12] "See generally, Fed. R. Bankr. P. 1007(b)(1) (debtor must file a schedule of assets and liabilities and a statement of financial affairs); Fed. R. Bankr. P. 1009(a) (schedules may be amended as a matter of course before case is closed); 11 U.S.C. § 1125(b) (1988) (debtor must provide claimants with a disclosure statement containing "adequate information"); Monroe County Oil Co. v. Amoco Oil Co., 75 B.R. 158, 162 (S.D. Ind. 1987) ("Among other things, the debtor must disclose any litigation likely to arise in a nonbankruptcy context" (internal quotation omitted))."  Hay, 978 F.2d at 557.

[13] Notwithstanding that plaintiff was estopped from pursuing his legal claims, the Hay court left open the question whether creditors could move to reopen the bankruptcy proceedings.  978 F.2d at 557.

the essential integrity of the judicial process"); Scarano v. Central R. Co., 203 F.2d 510, 513 (3rd Cir. 1953) (judicial estoppel prevents parties from "playing 'fast and loose with the courts'" (quoting Stretch v. Watson, 6 N.J.Super. 456, 469, 69 A.2d 596, 603 (1949))). Because the rule is intended to prevent "improper use of judicial machinery," Konstantinidis v. Chen, 626 F.2d 933, 938 (C.A.D.C. 1980), judicial estoppel "is an equitable doctrine invoked by a court at its discretion," Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990) (internal quotation marks and citation omitted).

Emphasizing that it was "not establish[ing] inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel," and that "[a]dditional considerations may inform the doctrine's application in specific factual contexts," the Court identified three factors that "typically inform the decision whether to apply the doctrine in a particular case." New Hampshire, 532 U.S. at 750-751. These are: "First, a party's later position must be 'clearly inconsistent' with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.' Absent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations,' and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped (judicial estoppel forbids use of 'intentional self-contradiction . . . as a means of obtaining unfair advantage')." Ibid. (citations omitted).

Applying these factors to the bankruptcy context, the Ninth Circuit, in Hamilton v. State Farm Fire & Casualty Co., 270 F. 3d 778 (9th Cir. 2001), estopped the plaintiff from bringing a bad faith claim against his insuror, not a creditor, because plaintiff had previously failed to identify in his bankruptcy petition the underlying claim for reimbursement of property loss then pending with the insuror. Though only a claim for reimbursement at the time plaintiff filed his bankruptcy petition, the claim was a potential asset requiring disclosure. The court reasoned:

> In this case, we must invoke judicial estoppel to protect the integrity of the bankruptcy process. The debtor, once he institutes the bankruptcy process, disrupts the flow of commerce and obtains a stay and the benefits derived by listing all his assets. The Bankruptcy Code and Rules impose upon the bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims. The debtor's duty to disclose potential claims as assets does not end when the debtor files schedules, but instead continues for the duration of the bankruptcy proceeding. Hamilton's failure to list his claims against State Farm as assets on his bankruptcy schedules deceived the bankruptcy court and Hamilton's creditors, who relied on the schedules to determine what action, if any, they would take in the matter. Hamilton did enjoy the benefit of both an automatic stay and a discharge of debt in his Chapter 7 bankruptcy proceeding. However, it is his failure to disclose assets on his bankruptcy schedules that provides the most compelling reason to bar him from prosecuting claims against State Farm.

Id. at 785 (citations and internal quotations omitted). Protecting the integrity of judicial proceedings and the bankruptcy process were at the heart of the Ninth Circuit's ruling:

> Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position. This court invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the courts. . . . The rationale for . . . decisions invoking judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy is that the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets. The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding. The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete.

Id. at 782, 785 (internal quotations, citations and emphasis omitted). So significant were these considerations that the Hamilton court applied the estoppel doctrine notwithstanding that the bankruptcy court later vacated its discharge of plaintiff's debt on other grounds. See id., 270 F.3d at 784 (initial discharge of debt was "sufficient acceptance [by bankruptcy court] to provide a basis for judicial estoppel, even if the discharge is later vacated").

Other circuits share the Ninth Circuit's view, as expressed in Hamilton, that a bankruptcy debtor may not recover on a claim against a noncreditor that should nonetheless have

14

been disclosed as an asset in the debtor's bankruptcy proceeding.  See, e.g., Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282, 1286 (11th Cir. 2002) (judicial estoppel applied to preclude damages action for employment discrimination by bankruptcy debtor who failed to disclose the action in his bankruptcy proceedings, noting that defendant need not have been prejudiced by omission of claim from bankruptcy proceeding because the doctrine is intended to protect the integrity of the judicial system, not the litigants);  In re Superior Crewboats, Inc., 374 F.3d 330, 334 (5th Cir. 2004) (judicial estoppel applied to preclude personal injury suit by bankruptcy debtor who failed to disclose suit in bankruptcy proceedings, noting that "because judicial estoppel is designed to protect the judicial system, not the litigants, detrimental reliance by the party opponent is not required" (citations omitted)).

        In Caviness v. England, 2007 WL 1302522, the District Judge adopted the recommendation of Magistrate Judge Dale A. Drozd that summary judgment be granted on behalf of defendants Gordon R. England, the Secretary of the Navy, and the Department of the Navy. The court found plaintiff judicially estopped from pursuing his Title VII action against these noncreditor defendants because he had failed to disclose the action, then pending administratively, in his bankruptcy proceedings.  Applying the factors identified in New Hampshire and Hamilton, the court reasoned (id., at *12):

> Plaintiff has maintained inconsistent positions in his bankruptcy proceedings and this court.  Plaintiff's creditors, the bankruptcy trustee, and the bankruptcy court relied on plaintiff's position that he had no administrative or legal claims, which gave plaintiff an unfair advantage.  By failing to disclose his discrimination claims in the bankruptcy proceedings, plaintiff implied that the claims were of no value.... Plaintiff's failure to disclose claims he now values at $1.2 million gained plaintiff the advantage of an automatic stay for approximately eighteen months, during which time creditors could not seek his assets, and prevented his creditors from gaining an interest in or control over his EEO claims.  A de facto confirmation plan ... was based on a list of assets that did not include plaintiff's discrimination claims.... It is plausible that some of plaintiff's creditors declined to submit claims to the bankruptcy court in reliance on plaintiff's asserted lack of assets, and plaintiff clearly succeeded in persuading the trustee and the court to accept his position that he had no assets of value.

Accord, Arruda v. C & H Sugar Co., Inc., ___F. Supp.___, 2007 WL 754627, *7 (E.D.Cal. 2007)

1  ("The integrity of the bankruptcy system relies on full disclosure of all assets, including potential
2  but unlitigated claims.  Plaintiff is therefore judicially estopped from maintaining [his]
3  discrimination claim in this Court because of his failure to properly inform the bankruptcy court
4  of the claims now asserted in this action."); Rose v. Beverly Health and Rehabilitation Services,
5  Inc., 356 B.R. 18, 27 (E.D.Cal. 2006) ("The court has considered each of the factors set forth in
6  Hamilton and concludes that the doctrine of judicial estoppel applies in this case to prevent
7  Plaintiff from advancing any claims against Defendants [discrimination and civil rights claims]
8  that accrued or were potential claims at the time Plaintiff's bankruptcy action was commenced").

9        Each of the factors warranting application of judicial estoppel doctrine are squarely
10  met by the circumstances of this case.  Hamilton, 270 F.3d at 783, citing New Hampshire, 532
11  U.S. at 750.  First, plaintiff has made clearly inconsistent representations to this court and the
12  bankruptcy court by failing to disclose his discrimination suit in his bankruptcy proceeding and
13  then seeking to proceed with the action before this court.  Plaintiff's partial response to the
14  requirement that he "list all suits and administrative proceedings to which the debtor is or was a
15  party within one year immediately preceding the filing of his bankruptcy case," demonstrates that
16  plaintiff understood the question and considered it before answering.  Second, plaintiff succeeded
17  in persuading the bankruptcy court to accept his incomplete and inaccurate representations,
18  resulting in a discharge of plaintiff's debts without reference to the potential asset encompassed
19  by the discrimination claim plaintiff now seeks to pursue before this court.  Third, failure to
20  impose judicial estoppel would allow plaintiff the unfair advantage of pursuing a claim he had
21  previously indicated had no value, after denying plaintiff's creditors any potential recovery from
22  this averred asset, as well as insulating plaintiff from any legal action the creditors may have
23  otherwise pursued during plaintiff's automatic bankruptcy stay.
24  \\\\\
25  \\\\\
26  \\\\\

1        These factors require judicial estoppel of this action, precluding plaintiff's further
2   pursuit of his claims.[14]  The court does not, therefore, reach the merits of plaintiff's Title VII
3   action.  Nor does the court consider whether plaintiff's claims warrant the trustee's reopening of
4   plaintiff's bankruptcy proceeding for the purpose of pursuing these claims on behalf of plaintiff's
5   creditors.  Cf., Biesek v. Soo Line R. Co., 440 F.3d 410, 413 (7th Cir. 2006) (declining to apply
6   estoppel where trustee pursued a previously undisclosed claim on behalf of creditors on the
7   ground that "[j]udicial estoppel is an equitable doctrine, and using it to land another blow on the
8   victims of bankruptcy fraud is not an equitable application").

9        The court's conclusion is based on the above authority which strongly indicates
10  that the case should be dismissed.  However, this is not to say that the undersigned has no
11  trepidation in applying it.  While the doctrine of "bankruptcy estoppel" has much force when the
12  claim not disclosed by the debtor is one of a commercial nature, it loses some of that force in a
13  Title VII action where the strong public policy disapproving of discrimination is in play.  It is the
14  rare case where potential, actionable discrimination should simply be ignored.  Moreover, the
15  remedies in a Title VII action include more than just monetary compensation.  Reinstatement and
16  other equitable remedies may be at issue.  Those remedies would not be involved or of value to
17  the bankruptcy estate.  However, as indicated by footnote 14, plaintiff does not seek those
18  remedies.  Moreover, the above doctrine does not take into account the intent of plaintiff in
19  omitting the claim in his bankruptcy disclosure.  Usually, actions which call for the dismissal of a
20  case because of a procedural violation require something akin to bad faith.  Finally, it is doubtful
21  that a bankruptcy trustee would have taken over this case on behalf of the debtor's estate even if a
22  disclosure had been made.  The much more likely result is that the debtor would have been

---

[14] Since plaintiff seeks only monetary relief in this action, not injunctive relief, there is no rationale for permitting this case to proceed on the latter basis.  Cf., Burnes, supra, 291 F.3d at 1288 (declining to estop plaintiff's pursuit of his "undisclosed claim for injunctive relief [because it] offered nothing of value to the estate and was of no consequence to the trustee or the creditors").

1  permitted to continue with his action – if the disclosure had been made.

2  IV.  CONCLUSION

3        For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendant's
4  motion for summary judgment be GRANTED.

5        These findings and recommendations are submitted to the United States District
6  Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days
7  after being served with these findings and recommendations, plaintiff may file written objections
8  with the court.  The document should be captioned "Objections to Magistrate Judge's Findings
9  and Recommendations."  Plaintiff is advised that failure to file objections within the specified
10 time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153
11 (9th Cir. 1991).

12 DATED: 04/29/08                                             /s/ Gregory G. Hollows

13                                                             _____
                                                               GREGORY G. HOLLOWS
14                                                             U. S. MAGISTRATE JUDGE

15 GGH5:Java0386.MSJ